No. 3:20-cv-533 SI
_____

IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF OREGON
_____

PETER SZANTO,
Plaintiff/Appellant,

v.

EVYE SZANTO, VICTOR SZANTO, NICOLE SZANTO, KIMBERLY SZANTO, MARIETTE SZANTO, ANTHONY SZANTO, AUSTIN BELL, AND BARBARA SZANTO ALEXANDER,
Defendants/Appellees,

Appeal from Adversarial Proceeding Case No. 16-3114-pcm
United States Bankruptcy Court, District of Oregon, Portland
Hon. Peter C. McKittrick
_____

**APPELLEES' ANSWERING BRIEF**
_____

> Nicholas J. Henderson, OSB No. 074027
> Motschenbacher & Blattner LLP
> 117 SW Taylor St., Suite 300
> Portland, Oregon 97204-3211
> Telephone (503) 417-0508
> nhenderson@portlaw.com
> Attorneys for Appellees

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

SUMMARY OF THE ARGUMENT ........................................................................1

ARGUMENT ............................................................................................................4

    **I.**    APPELLANT RAISES NO APPEALABLE ISSUE RELATED TO THE LETTER OPINION ..................................................................4

    **II.**   THE BANKRUPTCY COURT HAD THE INHERENT POWER TO SANCTION APPELLANT UNDER 11 U.S.C. § 105 EVEN IF IT DID NOT HAVE THE POWER TO SANCTION APPELLANT UNDER 28 U.S.C. § 1927 ..................................................................6

        A.    Standard of Review ................................................................6

        B.    Argument ................................................................................6

CONCLUSION .......................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) ................................................................................................................6

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-43 (1991) ................................... 7, 8, 10

*Liteky v. U.S.*, 510 U.S. 540 (1994) .......................................................................3

*Payan v. Aramark Management Services Ltd. Partnership*, 495 F.3d 1119, 1123 (9th Cir. 2007) ................................................................................................4

*Rosenthal v. Walker*, 111 U.S. 185, 193 (1884) ......................................................5

*Zaldivar v. Los Angeles*, 780 F.2d 823, 830 (1986) ................................................10

**Statutes**

11 U.S.C. § 105 ........................................................................... 2, 3, 6, 7, 10, 11

28 U.S.C. § 1927 ..................................................................... 2, 3, 6, 7, 9, 10, 11

**Rules**

Fed. R. App. P. 28 .................................................................................................1

Fed. R. Civ. P. 11 ...............................................................................................9, 10

{00512235:3}

## SUMMARY OF THE ARGUMENT

Plaintiff/Appellant Peter Szanto ("Appellant") appeals two rulings made by the bankruptcy court with respect to fee and sanction motions filed by Defendants/Appellees Evye Szanto, Victor Szanto, Nicole Szanto, Kimberly Szanto, Mariette Szanto, Anthony Szanto, Austin Bell and Barbara Szanto Alexander (collectively "Appellees")[1] in the underlying adversary proceeding. The first such ruling (Appx. 1-4) is a Letter Opinion prepared by Judge McKittrick in August of 2017 setting forth Judge McKittrick's ruling on Appellant's objections to a motion for sanctions filed by Appellees. The second ruling (Appx. 5-36) is a Memorandum Opinion prepared by Judge McKittrick in March of 2020 in response to two separate fee applications filed by Appellees after they were granted summary judgment on Appellant's claims; and after they were awarded judgment on their counterclaims following trial, respectively.

Appellant does not take issue with the substance of the Letter Opinion (Appx. 1-4) itself. Rather, he argues the Letter Opinion is void because he was never served with a copy of it. This ignores the fact that the Letter Opinion was

---

[1] Appellees recognize that under Fed. R. App. P. 28(d), counsel should minimize use of the terms "appellant" and "appellee" and should use the parties' actual names instead. However, given the fact that this dispute involves family members with the same last name, counsel believes the record is more clear if actual names are not used. Thus, counsel has chosen to use the terms "Appellant" and "Appellees."

1

clearly addressed to Appellant at the post office box he maintained (or claimed to have maintained) in Portland at the time.  Appellant further argues that as a result of the alleged failure to provide notice, he was denied an opportunity to object to the ruling.  This argument ignores the fact that a litigant "objects" to a ruling by a lower court by appealing that ruling to an appellate court, i.e., precisely what Appellant has done here.  Further, Appellant overlooks the fact that the Letter Opinion was issued in response to objections previously asserted *by Appellant*.  In other words, Appellant had notice and an opportunity to be heard.  The Letter Opinion in question is the ruling on those objections.  There is nothing in the record to suggest Appellant did not receive notice of this ruling, and even if he did not, there was no prejudice because there was no action for Appellant to take in response other than appeal the decision itself, which he has done, albeit in a manner entirely devoid of any argument questioning the substance of the ruling itself.  Accordingly, the ruling set forth in the Letter Opinion should be affirmed.

In his customary "shotgun" approach, Appellant argues that the Memorandum Opinion (Appx. 5-36) is flawed for a variety of reasons.  That being said, the only *substantive* argument advanced by Appellant is that Judge McKittrick skirted his inability to impose sanctions under 28 U.S.C. § 1927 by instead imposing them under the inherent authority granted by 11 U.S.C. § 105.  However, Appellant provides no authority for the simple proposition that a

bankruptcy judge who is precluded from awarding sanctions under 28 U.S.C. § 1927 is likewise precluded from awarding sanctions under 11 U.S.C. § 105 for the same conduct. Indeed, the law says otherwise, and thus Appellant's argument fails.

Appellant's remaining arguments concerning the substance of the Memorandum Opinion can be dismissed out of hand. There is the usual, tired argument that Judge McKittrick hates Appellant and that every decision he made in the underlying proceedings was motivated by such hatred.[2] Appellant supplements this with the related argument that Appellees could not have incurred any attorneys' fees in the proceedings below because Judge McKittrick denied each and every motion or request by Appellant *sua sponte* without the need for a response from Appellees, thus alleviating any need for Appellees to incur attorneys' fees. This argument is as ridiculous as it sounds, and the evidence of fees incurred provided to Judge McKittrick in the proceedings below shows that this argument has no basis in fact or law. Finally, Appellant argues that the Memorandum Opinion is flawed because Judge McKittrick failed to differentiate fees incurred as a result of Appellant's bad faith conduct from fees that were

---

[2] Appellees will not waste the court's time with yet another recitation of the holding of *Liteky v. U.S.*, 510 U.S. 540 (1994), which has been briefed at length in Appellant's other appeals before this court. Rather, Appellees incorporate the holding of *Liteky* by this reference.

incurred as a result of Appellant's legitimate efforts. Again, this argument finds no basis in fact or law. Judge McKittrick provided a detailed breakdown of Appellant's bad faith conduct, and he meticulously reviewed Appellees' fee request to ensure the fee award was not excessive. The Memorandum Opinion should be affirmed.

## ARGUMENT

I. **APPELLANT RAISES NO APPEALABLE ISSUE RELATED TO THE LETTER OPINION**

Appellant presents no disagreement with the substance of the Letter Opinion. He simply argues that he did not receive it and, combined with his lack of ECF access, was denied an "opportunity to object," thus rendering the ruling a nullity. Appellant's argument is belied by the facts and applicable legal presumptions.

The Letter Opinion was addressed to Appellant at POB 4614, Portland, OR 97208, i.e., the local address provided by Appellant for purposes of the underlying bankruptcy. (Appx. 1.) It is thus presumed that the Letter Opinion was mailed to Appellant at this address on August 14, 2017, i.e., the date the letter was issued. See, e.g., *Payan v. Aramark Management Services Ltd. Partnership*, 495 F.3d 1119, 1123 (9th Cir. 2007) ("We begin with the presumption that the letter issuance date is also the date on which the letter was mailed"). Having established via

presumption that the Letter Opinion was mailed to Appellant on August 14, 2017, we presume via the mailbox rule that Appellant received it. Upon a showing of predicate facts that a communication was sent, the mailbox rule presumes that the communication reached its destination in regular time. *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884).

Appellant pays no attention to the question of whether the Letter Opinion was actually mailed to him. His argument is based solely on the faulty presumption that ECF access was the only means by which he could have received a copy of the letter, when the face of the letter itself shows that was not the case. Further, even assuming *arguendo* that Appellant did not receive a copy of the Letter Opinion, he has not demonstrated any resulting prejudice. Appellant argues that he was denied the opportunity to object, but this argument overlooks the fact that Appellant did, in fact, file an objection to Appellees' Motion to Attorney Fees and Costs. There was no other opportunity to object. As the Letter Opinion states, it constitutes the bankruptcy court's *ruling* on Appellant's previous objections to the evidence supporting Appellees' fee request and Appellant's request to stay a cost award. Any "objection" Appellant had to this ruling could be raised via appeal, which Appellant has done here, albeit devoid of any substantive argument. Appellant is complaining about a procedure that doesn't exist.

The Letter Opinion is a valid ruling that was properly served on Appellant. The substance of the letter is not challenged by Appellant. Thus, the ruling in the Letter Opinion should be affirmed.

**II.     THE BANKRUPTCY COURT HAD THE INHERENT POWER TO SANCTION APPELLANT UNDER 11 U.S.C. § 105 EVEN IF IT DID NOT HAVE THE POWER TO SANCTION APPELLANT UNDER 28 U.S.C. § 1927**

**A.     Standard of Review**

Sanctions awards are reviewed under an abuse of discretion standard. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995).

**B.     Argument**

Appellant argues at length that Judge McKittrick skirted the fact that he was prohibited from issuing sanctions under 28 U.S.C. § 1927 by imposing sanctions under 11 U.S.C. § 105 instead. In so doing, Appellant completely misconstrues the interplay between these two statutes and their ability to coexist and complement one another. In sum, a judge's inherent authority under 11 U.S.C. § 105 to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process" exists wholly independent of his ability to issue sanctions under 28 U.S.C. § 1927. Judge

McKittrick was well within his authority to issue sanctions under 11 U.S.C. § 105 for Appellant's abusive litigation tactics.

A similar argument was advanced by the petitioner in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-43 (1991), who argued that "28 U.S.C. § 1927 and the various sanctioning provisions in the Federal Rules of Civil Procedure reflect a legislative intent to displace the inherent power" afforded federal judges under 11 U.S.C. § 105 to issue any order, process, or judgment that is necessary or appropriate to carry out justice. The United States Supreme Court found this argument unpersuasive and provided a detailed analysis explaining why federal judges retain the inherent power to control the proceedings before them separate and apart from the sanction power afforded under 28 U.S.C. § 1927:

> It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.
>
> Prior cases have outlined the scope of the inherent power of the federal courts. For example, the Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it. While this power ought to be exercised with great caution, it is nevertheless incidental to all Courts.

> In addition, it is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial …
>
> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we [have] recognized … outright dismissal of a lawsuit … is a particularly severe sanction, yet is within the court's discretion. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well …
>
> [A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.

*Chambers, supra*, at 43-46 (internal quotations and citations omitted).

Having laid out the historical basis for the inherent power of federal judges to control the proceedings before them through the issuance of sanctions, the Supreme Court went further to explain how this inherent power complements,

rather than supersedes (or is superseded by), similar statutes such as 28 U.S.C. § 1927:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices … Second, while the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders, many of the other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard ...
>
> It is true that the exercise of the inherent power of lower federal courts can be limited by statute and rule, for these courts were created by act of Congress. Nevertheless, we do not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power … [W]e [previously] determined that Congress had not repudiated the judicially fashioned exceptions to the American Rule, which were founded in the inherent power of the courts. Nothing since then has changed that assessment, and we have thus reaffirmed the scope and the existence of the exceptions since the most recent amendments to § 1927 and Rule 11, the other sanctioning mechanisms invoked by NASCO here. As the Court of Appeals recognized, *the amendment to § 1927 allowing an assessment of fees against an attorney says nothing about a court's power to assess fees against a party.* Likewise, the Advisory Committee's Notes on the 1983 Amendment to Rule 11 declare that the Rule builds upon and expands the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation … Thus, as the Court of Appeals for the Ninth Circuit has recognized, Rule 11 "does not

repeal or modify existing authority of federal courts to deal with abuses ... under the court's inherent power." *Zaldivar v. Los Angeles*, 780 F.2d 823, 830 (1986).

The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct … There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. <u>But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.</u> A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. <u>But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.</u>

*Chambers, supra,* at 46-50 (emphasis added; some internal quotations and citations omitted).

As the Supreme Court made clear in *Chambers*, the court's inherent power to assess fees against a party is not impacted by the potential applicability of another rule or statute under which similar sanctions may be available. Appellant would have this court believe the relationship between 28 U.S.C. § 1927 and 11 U.S.C. § 105 is akin to a supremacy clause type of situation wherein the former

takes precedence over the latter. But that is not the law. This is not an "either/or" situation. The two statutes can co-exist. There may be situations where they both apply. There may be situations where neither apply. There may be situations where one applies and the other does not; indeed, that is what happened here. Sanctions may not have been available under 28 U.S.C. § 1927, but they were available under 11 U.S.C. § 105, and Judge McKittrick explained in detail why he made the decision to issue sanctions under that statute. There was no abuse of discretion.

## **CONCLUSION**

Appellant was not denied the opportunity to object to the rulings in the Letter Opinion, and the bankruptcy court did not abuse its discretion in issuing sanctions under 11 U.S.C. § 105. Accordingly, these rulings should be affirmed.

Date: May 2, 2022

                                Motschenbacher & Blattner LLP

                                /s/ Nicholas J. Henderson
                                Nicholas J. Henderson, OSB No. 074027
                                Attorneys for Appellees

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) or 8016(d)(2) because this brief contains 3,282 words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

    Date: May 2, 2022.

                                        Motschenbacher & Blattner LLP

                                        <u>/s/ Nicholas J. Henderson</u>
                                        Nicholas J. Henderson, OSB No. 074027
                                        Attorneys for Appellees

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of May, 2022, a true copy of the foregoing APPELLEES' ANSWERING BRIEF was served on all participants of the Court's CM/ECF system, which sent notification of such filing by notice via email to the ECF participants of record a true copy of the foregoing document.

Date:  May 2, 2022

                        Motschenbacher & Blattner LLP

                        /s/ Nicholas J. Henderson
                        Nicholas J. Henderson, OSB #074027
                        Attorneys for Appellees